UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LIFT TRUCK LEASE AND SERVICE, INC., ) | |
| d/b/a A.D. LIFT TRUCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-153 CAS |
| ) | |
| NISSAN FORKLIFT CORPORATION, ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Nissan Forklift Corporation, North America's ("Nissan") motion to dismiss plaintiff Lift Truck Lease and Service, Inc.'s First Amended Complaint ("Complaint") pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. ADL opposes the motion and it is fully briefed. For the following reasons, the motion will be granted in part and denied in part.

**Background**

The Complaint alleges that plaintiff does business as A.D. Lift Truck ("ADL"), and is a Missouri corporation with its principal place of business in St. Louis, Missouri. ADL is in the business of selling new and used lift trucks (forklifts) and other industrial transportation equipment, and supporting parts and service, in various counties in Missouri and Illinois. Nissan is an Illinois corporation with its principal place of business in Illinois. Nissan is in the business of manufacturing for resale lift truck and other industrial transportation equipment under the Nissan Forklift and Barrett Industrial Trucks marks through a nationwide network of dealers, including ADL.

Prior to 2010, ADL had been a dealer for various other lift truck manufacturers. In late 2009, Nissan told ADL that it was interested in forming a long-term relationship with ADL as a franchisee/dealer of Nissan Forklift and Barrett Industrial Trucks, but that ADL would have to discontinue its sales of all other brands of lift truck products in order to become a Nissan franchisee/dealer. In late 2009, ADL discontinued sales of all lift truck products other than Nissan's, and severed its relationships with all other lift truck manufacturers.

On or about January 20, 2010, the parties entered into several agreements: a Nissan Forklift Dealer Agreement of indefinite term (the "Standard Agreement"), which appointed ADL as the exclusive authorized dealer of Nissan Forklift products in certain counties in Illinois and Missouri; a Nissan Forklift Dealer Term Sales and Service Agreement (the "Term Agreement") which expires by its terms as of February 1, 2012; and a Dealer Sales Agreement of indefinite term (the "Barrett Agreement"), for the sale of Barrett Industrial Trucks products. Since January 20, 2010, ADL has been the exclusive authorized dealer of Nissan/Barrett products in the St. Louis area under the three Agreements. The Agreements were filed as Exhibits A through C to the Complaint.

The Agreements impose certain performance obligations and sales goals on ADL, which are modified from time to time by Nissan pursuant to annual Dealer Marketing Plans. See Ex. D to Complaint. ADL alleges that during the course of the parties' franchisee/dealer relationship, Nissan never indicated that ADL's sales performance was in violation of any of the Agreements or any Dealer Marketing Plan.

On approximately January 10, 2012, Nissan sent a letter to ADL giving notice of its intent not to renew the Term Agreement, and to allow it to expire as of February 1, 2012. See Ex. E to Complaint. The letter asserts that ADL was in default of its obligations with respect to three items: (1) Class 1, 4, 5 market share; (2) Class 2, 3 market share; and (3) Parts goals. The letter terminates

2

the Barrett Agreement because ADL "has not provided adequate sales coverage as outlined in Section 11(a)." Id. The letter states, "This letter is your 90-day notice of non-renewal and termination for both Agreements and [ADL] will no longer be a Nissan or Barrett Dealer as of 4/15/12." Id. The letter also states that if ADL "cures the default outlined above" by achieving specific target goals within 60 days of the date of the letter, "the non-renewal and termination will not go into effect and [Nissan] will offer [ADL] a new 12-month Term Agreement." Id.

ADL also alleges that it has considerable customer goodwill developed in its thirty-five years of operation as a seller and servicer of lift trucks, a significant portion of which it developed prior to becoming a Nissan franchisee. ADL alleges that Nissan contacted ADL's customers to inform them that after April 15, 2012, it would no longer be an authorized Nissan/Barrett dealer or servicer and that another entity would take over those functions in the St. Louis area.

ADL filed this action on January 27, 2012 asserting claims against Nissan under the franchise provisions of the Missouri Merchandising Practices Act ("MMPA") in Count I, the Illinois Franchise Disclosure Act ("IFDA") in Count II, and the power equipment dealer provisions of the MMPA in Count III. Count IV asserts a claim for tortious interference with business expectancy and Count V requests preliminary and permanent injunctive relief.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). To determine whether a claim is facially plausible, a court must "'accept the allegations contained in the complaint as true and draw all

3

reasonable inferences in favor of the nonmoving party.'" Id. (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)). If a court "can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." Id. (quoting Iqbal, 129 S. Ct. at 1950)).

The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 1950. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562 (2007) (quoted case omitted).

In evaluating a motion to dismiss, a "court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (cited case omitted).

**Discussion**

A. Count I - Missouri Merchandising Practices Act (Franchise Act)

In Count I, ADL alleges that the Term Agreement creates a franchise between it and Nissan as that term is defined by § 407.405 of the Missouri Revised Statutes. ADL alleges that the letter of January 10, 2012 purports to give it notice of Nissan's intent not to renew the franchise as of February 1, 2012, and therefore gave ADL only twenty-two days' notice prior to termination, in violation of the ninety-day notice requirement of § 407.405.

Nissan moves to dismiss Count I on the following grounds: (1) § 407.405 does not apply to ADL because it is a power equipment dealer and therefore its rights are governed exclusively by the

4

Power Equipment Act, § 407.753, Mo. Rev. Stat.; (2) ADL has not pleaded facts to establish the existence of a franchise relationship with Nissan; (3) even if § 407.405 applied to ADL, Nissan provided ninety days' notice of termination in compliance with the statute; and (4) ADL's claim is premature and it has no damages because the parties' relationship has not yet been terminated, as suit was filed in the middle of the cure period and, if cure occurs, no termination will occur.

Nissan cites no case law in support of its argument that ADL is restricted to asserting claims under the Power Equipment Act, § 407.753, and is excluded from any protection offered by the Franchise Act, § 407.405. Nissan's citation to this Court's decision in <u>McBud of Missouri, Inc. v. Siemens Energy & Automation, Inc.</u>, 68 F.Supp.2d 1076 (E.D. Mo. 1999), does not support its argument. Nor does anything in the text of either statute indicate that they are mutually exclusive. The Court notes that in <u>Maude v. General Motors Corp.</u>, 626 F. Supp. 1081 (W.D. Mo. 1986), the United States District Court for the Western District of Missouri held that an automobile dealer was statutorily entitled to ninety days' notice of cancellation under § 407.405 despite the subsequent enactment of the Motor Vehicle Franchise Practices Act, § 407.825. This holding is contrary to the logic of Nissan's argument. The Court finds that this aspect of Nissan's motion is unpersuasive and should be denied.

The Court also finds that ADL has adequately pleaded the existence of a franchise relationship with Nissan. The MMPA defines "franchise" as:

> a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise[.]

§ 407.400(1), Mo. Rev. Stat.; Missouri Beverage Co., Inc. v. Shelton Bros., Inc., 669 F.3d 873, 876, 877 (8th Cir. 2012) (quoting § 407.400 and discussing the elements of "franchise" under Missouri law).

The Complaint and its attachments indicate that ADL has written arrangements pursuant to which Nissan granted ADL "a nonexclusive privilege to identify itself as an Authorized Dealer, and to display, in the conduct of its dealership operations, the trademarks and servicemarks [Nissan Forklift Corporation] uses in connection with Nissan products." Ex. A to Complaint, Standard Agreement at 2, § 2.1.2.[1] The Dealer Marketing Plan prepared by Nissan for ADL requires it to sell certain quantities of forklifts and other products. Ex. D to Complaint. These documents evidence an arrangement between the parties pursuant to which Nissan granted ADL a license to use its trade and service marks, and the existence of a community of interest in the marketing of goods and services. This aspect of Nissan's motion to dismiss should therefore be denied.

Nissan's third argument is that even if § 407.405 applies to ADL, Nissan provided ninety days' notice of termination in compliance with the statute. This argument does not entitle Nissan to dismissal of Count I when the allegations of the Complaint are accepted as true. ADL alleges that it received a termination letter dated January 10, 2012, giving notice of Nissan's intent not to renew the Term Agreement which was expiring on February 1, 2012. This is a period of twenty-two days, not ninety days. The letter also states that Nissan "further terminates your Barrett Sales Agreement . . . dated 1/20/10." Ex. E to Complaint. The letter then states that it is "your 90-day notice of non-renewal and termination for both Agreement and Dealer will no longer be a Nissan or Barrett Dealer as of 4/15/12." Id. Nissan cites no authority interpreting or applying the statute's ninety-day notice

---

[1] As stated above, in evaluating a motion to dismiss, the Court may consider exhibits attached to a complaint. Mills, 614 F.3d at 498.

requirement in a situation such as this, where the termination letter was sent less than ninety days before the termination date specified in the parties' agreements and referenced that termination date, but purports to establish a different termination date. In this factual context, the effective date of the termination is unclear, and the letter is subject to more than one interpretation.[2] As a result, Nissan's motion to dismiss on this basis should also be denied.

Finally, Nissan argues that ADL's claim is premature and it has no damages because the parties' relationship has not yet been terminated. The Court notes that Nissan's motion to dismiss and reply memorandum were filed prior to Nissan's self-selected termination date of April 15, 2012, which has now passed. This argument is therefore moot and does not warrant dismissal of ADL's Franchise Act claim.

B. Count II - Illinois Franchise Disclosure Act ("IFDA")

In Count II, ADL alleges that the three Agreements between it and Nissan create a "franchise" within the meaning of 815 Ill. Comp. Stat. 705/1, and the termination letter dated January 10, 2012 failed to provide at least six months' notice of Nissan's intent not to renew its franchise with ADL, in violation of 815 Ill. Comp. Stat. 705/20.

Nissan moves to dismiss Count II on the grounds that (1) the IFDA does not apply to ADL because it is not an Illinois resident; (2) ADL fails to allege facts showing the existence of a franchise relationship, specifically that ADL paid Nissan a franchise fee of $500 or more, a required element of a franchise under 815 Ill. Comp. Stat. 705/3.

---

[2] The question occurs, if the Term Agreement were to end on February 1, 2012 and not be renewed, what would be the status of the ADL/Nissan relationship between February 1, 2012 and April 15, 2012?

ADL responds that it has standing under the IFDA because the Standard Agreement grants it a license to sell Nissan products in twenty specified counties in Illinois. ADL further responds that the IFDA applies when an offer to sell a franchise is made from Illinois and accepted in Illinois, citing 815 Ill. Comp. Stat. 705/3(20), and that it alleges Nissan's principal place of business is located in Illinois. ADL cites no cases to support its argument that the IFDA's "offer to sell" provision entitles it to the IFDA's protections, and the provision does not do so by its plain language.

The IFDA provides in pertinent part, "It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business <u>located in this State</u> prior to the expiration of its term except for 'good cause' as provided in subsection (b) or (c) of this Section." 815 Ill. Comp. Stat. 705/19 (emphasis added). Nissan cites numerous decisions holding that the IFDA does not apply to franchisees whose businesses are located only outside of Illinois. Nissan has not indicated that any of these decisions address whether, under the statute, ADL is "located in Illinois" where its dealership territory includes twenty Illinois counties. Nor does Nissan discuss the effect, if any, of the parties' contractual choice of law provision, which states that Illinois law shall govern the parties' rights and obligations. The Court is therefore not persuaded by this argument.

Nissan's other argument against application of the IFDA is that ADL does not allege an essential element of a franchise under the statute – that it paid Nissan a franchise fee in excess of $500. ADL responds that under 815 Ill. Comp. Stat. 705/3(14), it has paid Nissan indirect franchise fees by virtue of the contractual mandate that it make unreasonably large purchases of products, parts, and advertising services from Nissan.

Whether or not ADL's response may be factually correct, the Complaint fails to allege that any franchise fee was paid or that any inventory or service purchase requirements constituting an indirect franchise fee were imposed. The Complaint's incorporation of the Agreements requiring

8

ADL to purchase inventory and services from Nissan is insufficient to allow the Court to infer more than a "mere possibility of misconduct," Iqbal, 129 S. Ct. at 1950, as there is nothing in the Complaint to indicate the purchase requirements were unreasonable or that an established market did not exist, as that term is defined under the IFDA. Nissan's motion to dismiss Count II should therefore be granted.

    C. Count III - Missouri Merchandising Practices Act (Power Equipment Act)

In Count III, ADL alleges that it is a power equipment dealer within the meaning of § 407.753, Mo. Rev. Stat., and that the Agreements between it and Nissan are subject to the provisions of the Power Equipment Dealers Act. ADL alleges that under § 407.753, the Agreements cannot be terminated by Nissan absent "good cause," and that good cause has not existed to terminate the Agreements at any time relevant to the Complaint's allegations. ADL also alleges that Nissan failed to comply with the statute's requirement that it provide at least ninety days' prior written notice of nonrenewal of any of the Agreements.

Nissan moves to dismiss Count III on the grounds that (1) its termination letter complied with the statute's ninety-day notice requirement; (2) ADL fails to plead any lack of good cause to terminate the Agreements, and the termination letter details ADL's failure to substantially comply with essential and reasonable market share requirements imposed upon it by the Term Agreement; and (3) ADL filed its Complaint during the pendency of the cure period offered by the termination letter, so no termination has occurred.

Nissan's first and third arguments are not persuasive for the reasons discussed above with respect to the Franchise Act claim in Count I. Nissan's second argument is also unpersuasive, as the Complaint alleges that ADL "has satisfied all of its obligations as a franchisee/dealer under the [Agreements] as the time for the performance of those obligations has come due" and that "during

9

the course of the parties' franchisee/dealer relationship, Nissan never indicated to ADL that ADL's sales performance was in violation of the [Agreements] or any Dealer Marketing Plan." Complaint at ¶¶ 25, 26. For purposes of a motion to dismiss, the Court accepts these allegations as true. The allegations are sufficient for the Court to reasonably infer that Nissan did not have good cause to terminate its relationship with ADL. Nissan's argument that ADL did not meet market share requirements are more appropriate for presentation on a motion for summary judgment or to a jury. Nissan's motion to dismiss Count III should be denied.

D. Count IV - Tortious Interference with Business Expectancy

In Count IV, ADL alleges that Nissan interfered with its business expectancy when it contacted ADL's customers and informed them, prior to the cure period set out in the termination letter, that ADL would no longer be an authorized dealer or servicer of Nissan or Barrett lift trucks after April 15, 2012. ADL alleges that it had a reasonable expectation of continuing business relationships it had developed with customers over its thirty-five years of operation as a seller and servicer of lift trucks, "a significant portion of which was developed prior to ADL becoming a Nissan franchisee/dealer," Complaint, ¶ 33, and that Nissan was aware of these relationships.

Nissan moves to dismiss Count IV on the grounds that (1) ADL has failed to set forth a substantial evidentiary basis that Nissan is liable for tortious interference; (2) ADL has failed to set forth allegations showing any lack of justification on Nissan's part; (3) ADL's allegation that Nissan required it to discontinue sales of all other lift truck products is untrue, as the Standard Agreement only required it to agree not to be an authorized TCM or Doosan Forklift dealer; and (4) ADL cannot assert a claim for tortious interference based on potential business from customers of Nissan Forklift or Barrett Industrial Trucks.

Nissan's first argument is without merit. At the dismissal stage, ADL is not required to establish a "substantial evidentiary basis" for its claim. To survive a motion to dismiss, ADL need only assert a facially plausible claim, the factual content of which "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cole, 599 F.3d at 861 (quoting Iqbal, 129 S. Ct. at 1949). The case relied on by Nissan, Community Title Co. v. Roosevelt Federal Savings & Loan Ass'n, 670 S.W.2d 895, 905-06 (Mo. Ct. App. 1984), addressed whether a substantial evidentiary basis for a tortious interference claim had been presented at trial, and therefore is unpersuasive authority with respect to a motion to dismiss.

Nissan's second argument is that ADL fails to plead facts showing lack of justification. The elements of a cause of action for tortious interference with business relations under Missouri law are: (1) a contract or a valid business relationship or expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the defendant's conduct. Fischer, Spuhl, Herzwurm & Assocs., Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo. 1979) (en banc).

"Missouri is among those jurisdictions which require that plaintiff plead and prove the acts of the defendant inducing or causing the breach be without justification." SSM Health Care, Inc. v. Deen, 890 S.W.2d 343, 346 (Mo. Ct. App. 1994); see Cady v. Hartford Acc. & Indem. Co., 439 S.W.2d 483 (Mo. 1969) (affirming dismissal of tortious interference claim where plaintiff failed to allege facts from which it could be found that the defendant, who had an interest in the contract at issue, interfered without justification with plaintiff's contract); Pillow v. General Am. Life Ins. Co., 564 S.W.2d 276, 282 (Mo. Ct. App. 1978) (same). To survive the motion to dismiss, ADL must

11

therefore plead facts, as opposed to conclusions, tending to show that Nissan acted without justification.

Under Missouri law, "One who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest." Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 373 (Mo. 1990) (en banc). As a result, a party with "an economic interest in a contract cannot be held liable for inducing a breach thereof even though motivated by self interest, in the absence of pleading and proof that such self-interested purpose was accomplished by improper means." Murray v. Ray, 862 S.W.2d 931, 935 (Mo. Ct. App. 1993) (quoted case omitted). For purposes of intentional interference with a business expectancy, improper means are those means which are "independently wrongful, notwithstanding injury caused by the interference." Community Title, 796 S.W.2d at 373. Examples of improper means are "misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or the common law." Id.

Here, Nissan has economic interests in its franchisee/dealer relationship with ADL, and in selling its forklifts to customers in the market for such equipment. Nissan has a legal right to protect those interests as long as it employs no improper means in doing so. The Complaint alleges that Nissan's communication of the termination to ADL's customers was wrongful because at the time the communication was made ADL had complied with the parties' Agreements, and the applicable cure period for any deficiency under the Agreements had not yet expired. Complaint, ¶¶ 25, 36, 62. The Court finds that ADL has sufficiently pleaded facts from which it can be reasonably inferred that Nissan used improper means, specifically that it communicated misrepresentations of fact to ADL's customers.

12

Nissan's argument that the parties' Agreements did not require ADL to sever its relationship with all other forklift dealers raises an issue of fact that is not a proper basis for a motion to dismiss. Finally, its argument that ADL cannot assert a claim for tortious interference based on potential loss of business from customers of Nissan Forklift or Barrett Industrial Trucks fails, where ADL pleads facts that Nissan's communication interfered with ADL's business expectancy with customers who preexisted its relationship with Nissan.

Nissan's motion to dismiss Count IV should therefore be denied.

E.  Count V - Request for Preliminary and Permanent Injunctive Relief

In Count V, ADL asserts that Nissan's conduct as alleged in the other counts of the Complaint will cause irreparable harm to its business goodwill, customer relationships, and status as a Nissan franchisee/dealer, and seeks preliminary and permanent injunctive relief enjoining Nissan from terminating the parties' relationship, terminating the Agreements, and communicating "false, deceptive, or misleading information about ADL to ADL's customers." Complaint, ¶ 73.

Nissan moves to dismiss this count on the basis that ADL cannot establish the necessary elements for injunctive relief, including the likelihood of success on the merits and the existence of irreparable harm. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)) (discussing factors relevant to issuance of injunctive relief). This aspect of Nissan's motion should be denied as premature, because ADL has not yet filed a motion for preliminary or permanent injunctive relief in this matter. As a result, the issue of injunctive relief is not currently before the Court.

**Conclusion**

For the foregoing reasons, the Court will grant defendant Nissan's motion to dismiss Count II of the First Amended Complaint, plaintiff's claim under the Illinois Franchise Disclosure Act, but will deny the remaining aspects of the motion.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Nissan Forklift Corporation, North America's motion to dismiss is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to Count II and **DENIED** in all other respects. [Doc. 15]

An appropriate order of partial dismissal will accompany this Memorandum and Order.

　

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  7th  day of September, 2012.