# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LIFT TRUCK LEASE AND SERVICE, INC., ) <br> d/b/a A.D. LIFT TRUCK, ) <br> ) <br>    Plaintiff, ) <br> ) <br>  v. ) <br> ) <br> NISSAN FORKLIFT CORPORATION, ) <br> NORTH AMERICA, ) <br> ) <br>    Defendant. ) | No. 4:12-CV-153 CAS |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on defendant Nissan Forklift Corporation, North America's ("Nissan") motion for summary judgment on Counts I and III of plaintiff Lift Truck Lease and Service, Inc.'s First Amended Complaint ("Complaint") pursuant to Rule 56, Federal Rules of Civil Procedure. ADL opposes the motion and it is fully briefed. For the following reasons, the motion will be granted in part and denied in part.

**Factual and Procedural Background**

This case arises out of a business relationship between plaintiff, which does business as A.D. Lift Truck ("ADL"), and Nissan. ADL is in the business of selling new and used lift trucks (forklifts) and other industrial transportation equipment, and supporting parts and service, in various counties in Missouri and Illinois. Nissan is in the business of manufacturing lift truck and other industrial transportation equipment under the Nissan Forklift and Barrett Industrial Trucks marks that are resold through a nationwide network of dealers.

In January 2010, the parties entered into several agreements: a Nissan Forklift Dealer Agreement of indefinite term (the "Standard Agreement"), which appointed ADL as the exclusive

authorized dealer of Nissan Forklift products in certain counties in Illinois and Missouri; a Nissan Forklift Dealer Term Sales and Service Agreement (the "Term Agreement") which expired by its terms as of February 1, 2012; and a Dealer Sales Agreement of indefinite term (the "Barrett Agreement"), for the sale of Barrett Industrial Trucks products.

The three Agreements imposed certain performance obligations and sales goals on ADL. On January 10, 2012, Nissan sent a letter to ADL giving notice of its intent not to renew the Term Agreement, and to allow it to expire as of February 1, 2012 (the "Notice Letter"). The Notice Letter asserted that ADL was in default of its obligations with respect to three sections of the Term Agreement. The Notice Letter also gave notice of Nissan's intent to terminate the Barrett Agreement because ADL "has not provided adequate sales coverage as outlined in Section 11(a)." The Notice Letter stated, "This letter is your 90-day notice of non-renewal and termination for both Agreements and [ADL] will no longer be a Nissan or Barrett Dealer as of 4/15/12." The Notice Letter also stated that if ADL cured the default by achieving specific target goals within 60 days of the date of the letter, "the non-renewal and termination will not go into effect and [Nissan] will offer [ADL] a new 12-month Term Agreement." Id.

ADL filed this action on January 27, 2012 and amended its complaint on February 10, 2012. The amended complaint contained five counts; the remaining three counts assert claims against Nissan under the Missouri Franchise Act, § 407.405, Mo. Rev. Stat. (Count I); the Missouri Power Equipment Act, § 407.753, Mo. Rev. Stat. (Count III); and for preliminary and permanent injunctive relief (Count V).[1]

---

[1] By Memorandum and Order of September 7, 2012, the Court granted Nissan's motion to dismiss ADL's claim under the Illinois Franchise Disclosure Act (Count II). See Docs. 41, 42. On October 2, 2012, the Court granted ADL's motion to voluntarily dismiss without prejudice ADL's tortious interference with business expectancy claim (Count V). See Doc. 50.

2

In Count I, ADL alleges that Nissan violated the Missouri Franchise Act by failing to provide at least ninety (90) days' advance notice that it was terminating or failing to renew the franchise Agreement between the parties. In Count III, ADL alleges that Nissan violated the Missouri Power Equipment Act by (1) terminating the parties' Agreements without good cause, and (2) failing to provide at least ninety (90) days' advance notice that it was terminating or failing to renew the Agreements between the parties.

**Legal Standard**

The Eighth Circuit recently clarified the appropriate standard for consideration of motions for summary judgment, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

**Facts**

With the foregoing standard in mind, the Court finds that the following facts, limited to the issue of statutory notice, are uncontroverted for purposes of the instant motion for summary judgment:

1. In January 2010, the parties entered into a Nissan Forklift Dealer Agreement of indefinite term (the "Standard Agreement"), which appointed ADL as the exclusive authorized dealer of Nissan Forklift products in certain counties in Illinois and Missouri; a Nissan Forklift Dealer Term Sales and Service Agreement (the "Term Agreement") which expired by its terms as of February 1, 2012; and a Dealer Sales Agreement of indefinite term (the "Barrett Agreement"), for the sale of Barrett Industrial Trucks products.

2. The three Agreements imposed certain performance obligations and sales goals on ADL.

3. On January 20, 2012, Nissan's Director of Distribution Management & Sales Intelligence hand-delivered a Notice Letter to ADL that placed ADL on a 60-day cure period.

4. The Notice Letter provided ADL with 90 days' notice of Nissan's intent not to renew the parties' Term Agreement because of ADL's failure to substantially comply with essential and reasonable requirements of the Term Agreement. The Notice letter sets forth specific deficiencies in ADL's market share performance and parts purchase requirements under the Term Agreement.

5. ADL's cure period began on January 10, 2012, and was to end 60 days later.

6. If ADL cured its default by meeting its fiscal year goals for market share performance and parts purchases, the non-renewal and termination would not go into effect and Nissan would offer ADL a new 12-month Term Agreement.

7. The Notice Letter further provided ADL with notice of Nissan's intent to terminate the Barrett Agreement because of ADL's failure to meet Nissan's requirements for reasonable market penetration. ADL's specific deficiencies and the cure requirements were recited in the letter.

8. The Notice Letter expressly advised ADL that any non-renewal or termination would not go into effect until April 15, 2012.

9. On January 27, 2012, ADL filed this action, seventeen days after receiving the Notice Letter.

10. On April 13, 2012, after the cure period expired, Nissan sent ADL's owner, Rudy Dodorico, another letter. This second letter stated that the cure period had ended and ADL had failed to meet its market share and parts performance requirements. The second letter stated that ADL's dealer agreement would be terminated, but not on the previously indicated date of April 15, 2012. Instead, in an attempt to allow the parties to reconcile their legal dispute, Nissan stayed ADL's termination for 90 days.

11. ADL continued to be a Nissan dealer through July 15, 2012. Through that time it continued to use the Nissan name, it kept up its Nissan advertising, and Nissan continued to accept orders and ship parts and equipment at ADL's request.

**Discussion**

    A. <u>Count I - Missouri Franchise Act</u>

Count I of the ADL's Complaint alleges that Nissan violated the Missouri Franchise Act, § 407.405, by failing to provide ADL with at least ninety (90) days' notice that it was terminating or failing to renew the franchise Agreement between the parties. The statute provides in pertinent part:

> No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of the cancellation, termination or failure to renew . . . .

§ 407.405, Mo. Rev. Stat.

Nissan moves for summary judgment on this claim, asserting it is entitled to judgment because (1) the Missouri Franchise Act does not apply to ADL's claims, because regulation of power equipment dealer practices is governed instead by the Missouri Power Equipment Act, § 407.753; and (2) even if the Franchise Act were applicable, ADL cannot show that Nissan failed to provide 90 days' notice of termination in compliance with § 407.405.

The Court does not address Nissan's first argument, because it finds the second argument dispositive. Assuming for purposes of summary judgment that the Missouri Franchise Act applies to the parties' business relationship, the Court concludes that Nissan's written notice to ADL met the statute's requirements. It is uncontroverted Nissan gave written notice to ADL on January 10, 2012 that it intended to terminate the parties' Agreements effective April 15, 2012, unless ADL cured the deficiencies identified in the letter within the next 60 days. The Notice Letter of January 10, 2012 thus gave ADL more than 90 days' notice of the impending termination. Although the Term Agreement was set to expire on February 1, 2012, the Notice Letter expressly advised ADL that any non-renewal or termination would not go into effect until April 15, 2012, and thus continued in effect the parties' franchise relationship.[2]

In addition, on April 13, 2012, Nissan gave ADL a second letter notifying ADL that (1) the cure period had ended and ADL had failed to meet its market share and parts performance

---

[2]It is uncontroverted that the two other agreements between the parties, the Standard Agreement and the Barrett Agreement, were of indefinite term.

requirements, and (2) ADL's dealer agreement would be terminated, but not on the previously indicated date of April 15, 2012. In an attempt to allow the parties to reconcile their legal dispute, Nissan stayed ADL's termination for 90 days. As a result, ADL continued to be a Nissan dealer through July 15, 2012. Through that time it continued to use the Nissan name, it kept up its Nissan advertising, and Nissan continued to accept orders and ship parts and equipment at ADL's request.

ADL argues that Nissan violated the Franchise Act when it delivered the Notice Letter on January 10, 2012, giving notice of Nissan's intent not to renew the franchise on April 15, 2012, where the Term Agreement by its own terms expired February 1, 2012. Because of the intervening expiration of the Term Agreement, ADL contends that Nissan actually gave it only 22 days' notice prior to termination, rather than 90 days as required by the statute.

Although the Court denied Nissan's motion to dismiss this claim, on summary judgment ADL's argument does not raise a genuine issue of material fact for trial. The statute requires that a franchisee be given 90 days' written notice in advance of the cancellation, termination or failure to renew of a franchise. Based on the uncontroverted facts, it is undisputed ADL received the written Notice Letter on January 10, 2012, which stated that the parties' franchise agreement would be terminated on April 15, 2012, if ADL did not cure the identified deficiencies. This notice complied with the Franchise Act's requirement. The fact that the Term Agreement called for an expiration date of February 1, 2012 does not mean that the parties' franchise relationship ended on February 1, 2012, because the Notice Letter expressly stated that any non-renewal or termination would not take effect until April 15, 2012. ADL actually continued to be a Nissan dealer through and after April 15, 2012. Further, Nissan gave ADL a second 90-day notice letter April 13, 2012, that continued the parties' franchise relationship through July 15, 2012, and ADL actually continued

7

to be a Nissan dealer through that date. ADL therefore received all of the notice required under the Franchise Act.

Accordingly, Nissan's motion for summary judgment should be granted as to the Franchise Act claim in Count I.

  B. <u>Count III - Missouri Power Equipment Act</u>

Count III of ADL's Complaint alleges violations of the Missouri Power Equipment Act, § 407.753, Mo. Rev. Stat., which provides that:

> Any manufacturer, wholesaler or distributor of industrial, maintenance and construction power equipment . . . who enters into a written or parol contract with any person, firm, or corporation engaged in the business of selling and repairing industrial, maintenance and construction power equipment . . . shall not terminate, cancel, or fail to renew any such contract without good cause. "Good cause" means failure by the retailer to substantially comply with essential and reasonable requirements imposed upon the retailer by the contract if such requirements are not different from those requirements imposed on other similarly situated retailers either by their terms or in the manner of their enforcement. In addition, good cause shall exist whenever:
>
> . . . .
>
> (8) The retailer has consistently failed to meet the manufacturer's, wholesaler's or distributor's requirements for reasonable market penetration based on the manufacturer's, wholesaler's, or distributor's experience in other comparable marketing areas.
>
> 2. Except as otherwise provided in this section, a supplier shall provide a a retailer at least ninety-days prior written notice of termination, cancellation, or nonrenewal of the contract. The notice shall state all reasons constituting good cause for termination, cancellation or nonrenewal and shall provide that the dealer has sixty days in which to cure any claimed deficiency. If the deficiency is rectified within sixty days the notice shall be void. The notice and right-to-cure provisions under this section shall not apply if the reason for termination, cancellation or nonrenewal is for any reason set forth in subdivisions (1) to (8) of this section.

§ 407.753.1-.2, Mo. Rev. Stat.

ADL's Complaint alleges that Nissan violated the Power Equipment Act by (1) failing to comply with the statute's requirement to provide at least ninety days' prior written notice of

8

nonrenewal of any of the Agreements; and (2) terminating the Agreements without good cause as defined under the statute.

Nissan moves for summary judgment on Count III, arguing that (1) its January 10, 2012 Notice Letter to ADL complied with the statute's ninety-day notice and right to cure requirements; and (2) there is no evidence it lacked good cause to terminate, cancel or not renew the Agreements, because ADL consistently failed to meet its requirements for reasonable market penetration based on Nissan's experience in other comparable markets, ADL failed to meet the essential and reasonable requirements of the Agreements, and similarly situated dealers were not treated differently.

Nissan is entitled to summary judgment on ADL's Power Equipment Act claim to the extent it is based on an alleged violation of the statute's notice provision, for the reasons discussed above with respect to the Franchise Act claim.

The Court finds, however, that genuine issues of material fact exist that preclude summary judgment on ADL's Power Equipment Act claim based on termination without good cause, including but not limited to whether Nissan's sales goals for ADL were "essential" or "reasonable;" whether ADL failed to substantially comply with those goals; whether Nissan treated ADL differently than other similarly situated retailers; and whether ADL "consistently" failed to meet Nissan's requirements for "reasonable market penetration" in "comparable marketing areas."

**Conclusion**

For the foregoing reasons, the Court will grant defendant Nissan's motion for summary judgment on plaintiff ADL's claims in Counts I and III for violation of the notice provisions of the Missouri Franchise Act and the Missouri Power Equipment Act. The Court will deny Nissan's

motion for summary judgment on ADL's claim in Count III for violation of the good-cause termination requirement of the Missouri Power Equipment Act.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Nissan Forklift Corporation, North America's motion for summary judgment is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to the claims for violation of the notice provisions of the Missouri Franchise and Power Equipment Acts in Counts I and III, and **DENIED** as to the claim for violation of the good-cause termination requirement of the Missouri Power Equipment Act in Count III. [Doc. 67]

An appropriate partial judgment will accompany this Memorandum and Order.

                                                            */s/ Charles A. Shaw*
                                                          **CHARLES A. SHAW**
                                                          **UNITED STATES DISTRICT JUDGE**

Dated this  12th  day of June, 2013.