# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| LIFT TRUCK LEASE AND SERVICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-153 CAS |
| | ) | |
| NISSAN FORKLIFT CORPORATION, | ) | |
| NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Nissan Forklift Corporation, North America's ("Nissan") Motion to Exclude Testimony of Steve Gula, or, in the Alternative, Motion in Limine. The motion seeks to exclude the testimony of plaintiff Lift Truck Lease and Service, Inc., d/b/a A.D. Lift Truck's ("ADL") witness who will testify as to damages. ADL opposes the motion and it is fully briefed. For the following reasons, the motion to exclude testimony will be denied, and the motion in limine will be denied without prejudice.

A. <u>Motion to Exclude Testimony</u>

Nissan's motion to exclude Mr. Gula's testimony under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 592-93 (1993), states that ADL has not designated Mr. Gula as an expert, even though his opinions require scientific, technical or other specialized knowledge not within the ordinary experience of lay persons, thus requiring expert foundation from a witness properly designated under Federal Rule of Evidence 702. Nissan also asserts that Mr. Gula's methodology for reaching his opinions is severely flawed.

ADL responds that Mr. Gula is not a expert witness and was not designated as an expert witness. ADL states that Mr. Gula is its controller and is responsible for its financial matters, and that his testimony concerning ADL's damages is based on reports of ADL's expenditures in the various departments of its business as shown in its books and records.

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), a party is required to disclose to other parties the identity of any "witness it may use at trial to present evidence under Federal Rule

of Evidence 702, 703, or 705." Rule 26(a)(2)(A), Fed. R. Civ. P. Having carefully reviewed the parties' memoranda and supporting exhibits, the Court finds that Mr. Gula's testimony is not expert testimony but instead will be based on his personal knowledge acquired through the review of records prepared in the ordinary course of his employment as ADL's controller. As a result, ADL was not required to identify and disclose Mr. Gula as an expert witness, and his testimony is not subject to the <u>Daubert</u> analysis. Nissan's motion to exclude Mr. Gula's expert testimony pursuant to <u>Daubert</u> should therefore be denied.

B.  <u>Alternative Motion in Limine</u>

Nissan also moves to limit or exclude Mr. Gula's testimony as a lay opinion witness on the grounds that (1) his methodology is contrary to the law of damages; (2) he improperly seeks recovery of expenditures the parties mutually agreed would be the responsibility of ADL in its advancement of the parties' agreements; (3) his calculations omit or do not consider relevant reductions in costs; and (4) there is no basis for his contention that ADL is entitled to a 24-month recovery or recoupment fee of $1.6 million.

1.  *Contractual Limitation of Liability Provision*

The Court first considers Nissan's argument that the limitation of liability provision in the parties' agreement precludes the damages ADL seeks under the Missouri Power Equipment Act, § 407.753, Mo. Rev. Stat. (2000). The contractual provision states:

> 18.11.  <u>Limitations of NFC's Liability</u>.  This Agreement contemplates that all investments by or in the Dealer shall be made, and that the Dealer shall purchase and resell Nissan Products, in conformity with the provisions hereof, but otherwise in the discretion of Dealer.  Except as specified in this Agreement, NFC shall have no liability in connection with the business of Dealer or for any expenditures made or incurred by dealer in preparation for performance or in performance of Dealer's responsibility under this Agreement.

Mot. to Exclude, Ex. C, Nissan Forklift Dealer Agreement at 15.

Nissan states that under Missouri law, a sophisticated commercial entity such as ADL may waive even fundamental rights such as the right to a jury trial and statutory rights such as forum selection, citing <u>Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.</u>, 59 S.W.3d 505, 508 (Mo. 2001) (en banc).  Nissan asserts that this Court has held a limitation of liability clause could

be enforced in a case invoking Sections 407.410 and 407.413 of the Missouri Franchise Act, citing Saey v. Xerox Corp., 31 F.Supp.2d 692, 701-02 (E.D. Mo. 1998), and notes that ADL invokes the Missouri Franchise Act in Count I.[1]

Although this Court upheld a limitation of liability clause in Saey, Nissan's assertion that the Court enforced such a clause on a Missouri Franchise Act claim is incorrect. In Saey, the defendant argued only that the limitation of liability clause in the parties' agency agreement precluded the contract damages plaintiff sought on his breach of contract claim. The defendant in Saey did not argue, and the Court did not hold, that the contractual limitation of liability clause barred the plaintiff's claim for statutory damages under the Missouri Franchise Termination Notification Act, § 407.410. Saey, 31 F.Supp.2d at 701. The Saey decision therefore offers no support for Nissan's position.[2]

ADL responds that a manufacturer cannot "contract around the obligations and liabilities imposed upon it by Missouri statutes," Mem. Opp. at 3, and contends that the limitation of liability clause is irrelevant because its claim is based on a statute and not on contract. In support, ADL quotes the Missouri Supreme Court's statement that "there is no question that one may never

---

[1]Plaintiff ADL's claim under the Missouri Franchise Act, § 407.405, was dismissed by the Memorandum and Order of June 12, 2013 (Doc. 92). ADL's remaining claim is under the Missouri Power Equipment Act, § 407.753, which has a separate statutory damages provision, § 407.755, from the Missouri Franchise Act. Section 407.755, titled "Action for damages and costs by retailer for violations--remedy not exclusive" provides:

> If a manufacturer, wholesaler or distributor violates any provisions of sections 407.753 and 407.754, a retailer may bring an action against such manufacturer, wholesaler or distributor in any court of competent jurisdiction for damages sustained by the retailer as a consequence of the violation, together with the actual costs of the action, including reasonable attorney's fees. The court may award court costs and reasonable attorney's fees to the prevailing party. The remedies set forth in this section shall not be deemed exclusive and shall be in addition to any other remedies permitted by law.

407.755, Mo. Rev. Stat. (emphasis added).

[2]The Court is not sure whether Nissan intentionally seeks to mislead, or if its discussion of the Saey decision was merely imprecise. The Court expects Nissan's counsel to exercise more care in the future to accurately represent the law.

exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." Alack v. Vic Tanny International of Missouri, Inc., 923 S.W.2d 330, 337 (Mo. 1996) (en banc).

In Missouri, sophisticated parties may contract to relinquish fundamental rights, see Purcell, 59 S.W.3d at 208, but this rule is limited by the public interest. Alack, 923 S.W.3d at 337. This Court has observed that Missouri law allows enforcement of limitation of liability clauses when they are not unconscionable or against public policy. Saey, 31 F.Supp.2d at 701. The Court must therefore determine whether enforcement of the limitation of liability provision in the parties' agreement would be against public policy.

The Eighth Circuit Court of Appeals has discussed the public policy behind Chapter 407 of the Missouri Revised Statutes and concluded it is "paternalistic," and a "fundamental policy." Electrical and Magneto Serv. Co., Inc. v. AMBAC Int'l. Corp., 941 F.2d 660, 663 (8th Cir. 1991), abrogated on other grounds by Baxter Int'l, Inc. v. Morris, 976 F.2d 1189 (8th Cir. 1992). In AMBAC, the Eighth Circuit noted that under Missouri law, "individual statutes comprising a chapter are to be construed consistently with each other," id. at 662, and observed that Chapter 407 deals broadly with merchandising practices and "protects Missourians from improper practices associated with" various kinds of commercial ventures including franchises. Id. at 663. The Eighth Circuit concluded that Chapter 407 represents a fundamental policy of the State of Missouri, that the Missouri legislature would not want waived by the persons it was intended to protect:

> In short, Chapter 407 is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices. Having enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection. Furthermore, the very fact that this legislation is paternalistic in nature indicates that it is fundamental policy: a fundamental policy may be embodied in a statute which . . . is designed to protect a person against the oppressive use of superior bargaining power.

Id. at 662 (internal quotation marks and citation omitted).

The Missouri Supreme Court has approved the legislative scheme designed to protect Missouri franchisees, and in one decision protecting the holder of a liquor distribution franchise

invalidated a forum-selection clause where the clause was "unreasonable" and unfairly prejudiced the franchisee. See High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493, 500 (Mo. 1992) (en banc). The Court found that the statutes in Chapter 407 "carry heightened public policy considerations that outweigh any public policy considerations involved in the enforcement of a forum selection clause[,]" id. at 498, citing with approval the Eighth Circuit's AMBAC decision. The Missouri Supreme Court stated that "the Eighth Circuit . . . recognized the strong public policy reflected in Chapter 407 generally" in protecting franchisees and "the very fact that this legislation is paternalistic in nature indicates that it is fundamental policy." Id. at 498 (citing Restatement (Second) of Conflicts § 187 comment g).

Citing the strong, paternalistic public policy underlying Chapter 407, Missouri courts have also prohibited the use of other defenses in actions under various provisions of the chapter. See, e.g., Huch v. Charter Communications, Inc., 209 S.W.3d 721, 725-26 (Mo. 2009) (en banc) (holding that the voluntary payment doctrine was not available as a defense in an action under the Missouri Merchandising Practices Act, § 407.025, Mo. Rev. Stat.); Whitney v. Alltel Communications, Inc., 173 S.W.3d 300, 314 (Mo. Ct. App. 2005) (holding a contract provision requiring arbitration was unconscionable because giving it effect would deny protections afforded by the Missouri Merchandising Practices Act); Pointer v. Edward L. Kuhs Co., 678 S.W.2d 836, 844 (Mo. Ct. App. 1984) (the affirmative defense of estoppel is not available in the context of a merchandising practices case because estoppel "may not be used where it would result in fraud.").

The Missouri Legislature undoubtedly enacted the Missouri Power Equipment Act and the rest of Chapter 407 in order to protect the public. As set forth above, Missouri courts and the Eighth Circuit have found that Chapter 407 represents a fundamental policy of the State of Missouri, and have refused to apply contractual provisions and legal doctrines that would infringe on the protections offered by the statutes. In this case, it is clear that Nissan is the party with superior bargaining power and ADL is the party for whose benefit the Power Equipment Act was enacted.

The Missouri legislature's enactment of statutory protections for franchisees reflects fundamental policy decisions. As a result, the protections provided by the Power Equipment Act

may not be stripped away by the franchisor securing contractual agreement to avoid or limit its liability under the Act, because to do so would be contrary to public policy. The Court finds that the limitation of liability provision in the parties' agreement is therefore unenforceable to the extent it limits the statutory protections afforded to ADL under the Power Equipment Act.

## 2. *Other Challenges to Mr. Gula's Testimony*

Nissan also challenges Mr. Gula's testimony as a lay opinion witness with respect to ADL's alleged damages, arguing that his testimony fails to meet the standards of Federal Rule of Evidence 701. Nissan states that Mr. Gula testified ADL's revenues comes from equipment sales, parts, service and rentals, with profits coming mostly in the rental and service departments,[3] while the sales department is a "loss leader" and is not profitable. Nissan states that instead of basing ADL's damages calculation on lost profits or lost sales, or comparing profits/losses from its sales department before it became a Nissan dealer with its pre-Nissan profits/losses, Mr. Gula simply calculated ADL's "cost of running a sales department" and established a 24-month recovery period to "'undo' everything ADL did as a Nissan dealer." Mot. to Exclude at 4. Nissan asserts that Mr. Gula contends ADL should recoup the money it spent to perform acts it categorizes as duties it performed on behalf of Nissan, plus an additional two years' worth of money to re-establish itself as a dealer for a new line of forklifts.

Nissan challenges Mr. Gula's methodology as unreliable and having "absolutely no basis," stating that Missouri courts have consistently rejected projections when they are based upon assumptions or hopeful expectations, citing Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913, 919 (8th Cir. 2004) (concerning testimony about lost profits).

Nissan also contends that Mr. Gula's damages calculation omits or does not consider relevant reductions in costs and fails to substantiate that the key assumptions upon which he bases his opinions are a direct result of Nissan's alleged conduct. Nissan correctly states that Mr. Gula's

---

[3]Nissan's motion incorrectly states that ADL's profits come primarily from parts and service. Mr. Gula testified that 70% of ADL's profits come from rentals, and the remaining 30% come from service, while sales is a loss leader and parts is "basically break even." Mot. to Exclude, Ex. A, Gula Dep. at 87, ll. 3-13.

calculations for sales department expenses includes costs ADL would have incurred even if it had continued selling its previous forklift line instead of selling Nissans, as it includes expenses for any person who worked in the sales department – salesmen payroll, clerical payroll, sales department accountants and administrative personnel – and the costs of sales personnel and mechanics ADL hired from the previous Nissan dealer in St. Louis, even though these individuals did not work exclusively on Nissan forklifts for ADL. Nissan states that Mr. Gula admitted he has no idea how much these expenses might have changed during ADL's tenure as a Nissan dealer in contrast to previous expenses. Nissan also contends that Mr. Gula's damages calculations are flawed because he includes the costs of mechanics, but does not offset those costs by any revenues earned by the mechanics. Nissan concludes that Mr. Gula's opinions are based on an incomplete picture, are far too speculative, and are unreliable.

Finally, Nissan contends that Mr. Gula's 24-month recovery cost element of ADL's damages is based on the assumption that ADL is entitled to recoup its investment – both for its time as a dealer and for an arbitrary 24-month period after termination – on the theory that ADL now has to "undo" everything it did to become a Nissan dealer. Nissan contends that in Missouri, a right of recoupment applies only to "terminable at will" agreements, citing Ernst v. Ford Motor Co., 813 S.W.2d 910, 919 (Mo. Ct. App. 1991), and that there is no such right in this case because the parties' agreement provided for a two-year term, as well as the possibility of renewal.

In opposition, ADL responds only that there is no case law, state or federal, addressing the issue of the appropriate measure of damages under the Power Equipment Act, and that Nissan's challenge to Mr. Gula's calculation of damages raises issues that are properly the subject of cross-examination at trial.

Rule 701, Fed. R. Evid., provides as follows with respect to lay opinion testimony:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

7

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

"A lay witness' testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact in issue." Burlington N. Railroad Co. v. State of Neb., 802 F.2d 994, 1004 (8th Cir. 1986). "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." Id. at 1004-05. Cf. Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 183, 187 (Mo. 2009) (en banc) (company's accountant could testify as to company's lost profits based on review of plaintiff's business records and its construction market).

Nissan's motion in limine challenges whether Mr. Gula's testimony is helpful to determining a fact in issue – ADL's damages – and whether it is rationally based on his perceptions. There are no cases that interpret the Power Equipment Act's damages provision, which allows a retailer to recover "damages sustained . . . as a consequence of the violation," plus costs and attorney's fees. § 407.755, Mo. Rev. Stat. The plain language of the statute, however, would appear to permit recovery of both actual and consequential damages. "Actual damages are compensatory and are measured by the loss or injury sustained." Stiffelman v. Abrams, 655 S.W.2d 522, 531 (Mo. 1983) (en banc). "Consequential damages are those damages naturally and proximately caused by the commission of the breach and those damages that reasonably could have been contemplated by the defendant at the time of the parties' agreement." Ullrich v. CADCO, Inc., 244 S.W.3d 772, 779 (Mo. Ct. App. 2008).

Under general principles of Missouri law, ADL is required to prove the existence and amount of its damages with reasonable certainty. See Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc., 178 F.3d 1030, 1034 (8th Cir. 1999); Aluminum Prods. Enters., Inc. v. Fuhrmann Tooling & Mfg. Co., 758 S.W.2d 119, 121 (Mo. Ct. App. 1988). "A party attempting to prove damages need only place before the jury 'the relevant facts tending to show the extent of damages,' enabling the

jury 'to make an intelligent estimate of [damages] as circumstances of the case will admit.'" <u>C.L. Maddox, Inc. v. Benham Group, Inc.</u>, 88 F.3d 592, 601 (8th Cir. 1996) (quoting <u>Morris v. Perkins Chevrolet, Inc.</u>, 663 S.W.2d 785, 788 (Mo. Ct. App. 1984)). Nonetheless, "the evidence must not leave the matter [of damages] to speculation." <u>Haggard v. Mid-States Metal Lines, Inc.</u>, 591 S.W.2d 71, 77 (Mo. Ct. App. 1979). "A party should be fully compensated for its loss, but not recover a windfall." <u>Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.</u>, 155 S.W.3d 50, 54 (Mo. 2005) (en banc). "The ultimate test for damages is whether the award will fairly and reasonably compensate the plaintiff for [its] injuries." <u>Sampson v. Missouri Pac. R. Co.</u>, 560 S.W.2d 573, 588 (Mo. 1978) (en banc).

The Court will not issue a ruling on Nissan's motion in limine at this time, and instead will direct the parties to provide additional briefing on the issue, to be addressed at the final pretrial conference. As an initial matter, the Court is not persuaded by Nissan's contention that Mr. Gula's testimony is inadmissible because he failed to consider a lost profit analysis, for two reasons. First, the damages available to ADL are those provided by § 407.755, which broadly allows "damages sustained . . . as a consequence of the violation of § 407.753," which may include but is not limited to lost profits. Second, ADL's alleged damages appear to be based on its reliance interest in the Nissan franchise and the expenditures it made in performance of the franchise agreement. This is a recognized alternative basis for damages. <u>See generally</u> <u>Restatement (Second) of Contracts</u>, § 349.

The Court finds that Mr. Gula's testimony would be helpful to the jury's determination of ADL's alleged damages and that it is, at least in part, rationally based on his perceptions. This having been said, the Court's preliminary view is that Nissan's objections to Mr. Gula's methodology concerning the 24-month recoupment period may be well taken. ADL has chosen to pin its claim for damages strictly on its sales department. Mr. Gula testified that to reach his primary damage figure of approximately $1.6 million, he took the total cost of operating ADL's sales department for the 29 months it was a Nissan dealer, reduced the cost overall by ten percent (10%) and divided it by 29, and then multiplied that number by 24 to get the claimed damages. When

asked to explain how he settled on the 24-month recovery period and associated cost, Mr. Gula testified:

> The theory – my theory behind that is we had – we spent – during 29 months we spent a certain dollar number promoting, resurrecting, whatever you want to call it, but directly trying to reestablish Nissan in this market, okay. We're going to have to spend, in my opinion, at least 24 months doing that for whatever manufacturer we're married to now. Okay. Therefore, since we believe that we should still be a Nissan dealer, that we didn't do anything wrong and you don't want us anymore, then we should be given some money to reestablish ourselves, reestablish a market for whoever we're a dealer for. Because now we have to go back out and undo all the things we did for Nissan. Now we have to go out and tell everybody what's wrong with Nissan, why they should buy something else. So we should have some money to repair all the work that we did that we've got to undo. Now, I may be crazy, but that's my philosophy.

Gula Dep. at 107, ll. 4-25. Mr. Gula's testimony did not explain how ADL's sales costs differed between the time ADL was a Nissan dealer and when it sold other makers' forklifts; did not state if ADL's sales department lost more or less money when it was a Nissan dealer than when it sold other forklifts; and did not state if ADL was making more or less money in its other departments (or overall) when it was a Nissan dealer than when it sold other forklifts.

It appears on preliminary review that this portion of Mr. Gula's damage calculation would overcompensate ADL for damages as a result of Nissan's termination of the franchise and result in a windfall. Further, Mr. Gula's stated basis for the 24-month recovery period appears rather speculative.[4] ADL should therefore be prepared to more closely tie its damage calculations to (1) specific expenditures it incurred as a result of becoming a Nissan dealer and performing under the parties' agreements, that it would not have otherwise incurred had it continued selling other

---

[4]At this point, the Court is not convinced that ADL could not, as a matter of law, seek some measure of recoupment as part of its damages, despite the general rule in Missouri that recoupment damages may be recovered only for termination of a franchise at will. Section 407.755 broadly authorizes a power equipment retailer to obtain "damages sustained . . . as a consequence of the violation" of the Power Equipment Act. The only Missouri recoupment decision cited by Nissan, Ernst, did not address a claim under any provision of Chapter 407, and therefore does not conclusively resolve the issue whether some form of recoupment could be an element of damage under the statute. See Ernst v. Ford Motor Co., 813 S.W.2d 910, 915 (Mo. Ct. App. 1991) (plaintiff's claims were for breach of contract, estoppel, unjust enrichment, recoupment, tortious interference, and Kansas and Wisconsin dealership statutes). Ernst appears to have been decided shortly before § 407.753 took effect. See also Armstrong Bus. Servs., Inc. v. H & R Block, 96 S.W.3d 867 (Mo. Ct. App. 2002) (discussing recoupment doctrine in context of breach of contract claim arising out of franchise relationship).

manufacturers' forklifts instead, and/or (2) to reasonably measurable losses it incurred as a result of the franchise termination. Also, ADL should be prepared to offer a more detailed evidentiary basis for its contention that it is entitled to damages in the nature of a 24-month recoupment period.

Although the Court is mindful that ADL bears the burden to establish its damages, Nissan, for its part, should be prepared to inform the Court what it believes the appropriate remedy would be, i.e., the correct measure of ADL's damages, if the jury were to find that Nissan terminated the parties' agreement in violation of the Power Equipment Act.

Mr. Gula also testified to $382,000 in certain "miscellaneous" damages incurred by ADL, which include: (1) the hiring of two Nissan mechanics; (2) the hiring of a Nissan parts man; (3) training expenses for ADL's own mechanics to work on Nissan equipment; (4) the cost to acquire the telephone number of the former Nissan franchisee; (5) floor plan interest ADL paid to Nissan; (6) improvements and dealer preparation ADL provided to Nissan equipment it offered for sale; and (7) warranty shortages.

The Court's preliminary view is to agree with ADL that Nissan's objections to this aspect of Mr. Gula's testimony, such as his failure to account for revenues earned by mechanics hired in order to service Nissan equipment, failure to verify assumptions about certain expenses for employees who worked on non-Nissan brand equipment, and failure to consider relevant reductions in cost, are matters appropriate for exploration on cross examination, and would not warrant the exclusion of his testimony.

**Conclusion**

For the foregoing reasons, Nissan Forklift Corporation, North America's Motion to Exclude Testimony of Steve Gula, or, in the Alternative, Motion in Limine will be denied to the extent it seeks to exclude Mr. Gula's testimony pursuant to <u>Daubert</u>, and will be denied without prejudice to the extent it is a motion in limine directed to his lay opinion testimony. Nissan may renew its objections to Mr. Gula's testimony in a motion in limine filed by the deadline established in the Case Management Order. On rebriefing of the motion in limine, the Court urges Nissan and ADL to (1) address the specific issues discussed above with respect to the appropriate measure of damages, and

(2) provide the Court with citation to relevant legal authority from other jurisdictions addressing the correct measure of damages in the context of franchise terminations.

Accordingly,

**IT IS HEREBY ORDERED** that Nissan Forklift Corporation, North America's Motion to Exclude Testimony of Steve Gula, or, in the Alternative, Motion in Limine is **DENIED in part** and **DENIED in part** without prejudice; the motion is **DENIED** to the extent it seeks to exclude Mr. Gula's testimony pursuant to <u>Daubert</u>, and **DENIED without prejudice** to the extent it is a motion in limine concerning Mr. Gula's testimony as a lay opinion witness. [Doc. 68]

**IT IS FURTHER ORDERED** that Nissan Forklift Corporation, North America may renew its objections to Mr. Gula's lay opinion testimony in an appropriate motion in limine, which should include its position as to the correct measure of ADL's alleged damages, and must be filed by the deadline established in the Case Management Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __18th__ day of June, 2013.